UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| RYAN MANNING | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| ROCHESTER SCHOOL DISTRICT, SAU 54 | : | |
| | : | |
| Defendant | : | JURY TRIAL DEMANDED |

COMPLAINT

Count I

Americans with Disabilities Act Claim

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This is an action arising under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., as amended.

2. The plaintiff is a citizen of the State of New Hampshire, residing at 4 Amanda Lane, Rochester, New Hampshire 03867.

3. The defendant, Rochester School District, School Administrative Unit 54, is a public school district and is an agency, department, or equivalent sub-entity of the City of Rochester, New Hampshire, having its principal office and headquarters at 150 Wakefield Street, Rochester, New Hampshire 03867.

4. From approximately August of 2024 to approximately June of 2026, the plaintiff was employed by the defendant school district as an elementary school teacher at its Chamberlain Street School in Rochester. During the 2024-2025 school year, he taught a class of 1st grade students, and during the 2025-2026 school year he taught a class of 5th grade students.

5. Prior to becoming a schoolteacher, the plaintiff spent several years in the military service. He was a member of the United States Army for close to eight years, from 2013 to 2021.

6. Regrettably, one unfortunate consequence of his service in the military was that he developed a case of post-traumatic stress disorder ("PTSD"), likely caused by his experiencing the deaths of several fellow service members with whom he had become good friends. He was ultimately given a medical discharge from the Army in August of 2021.

7. Some of the more salient effects of his PTSD were that he became nervous, anxious and/or paranoid when in crowds and/or when in small rooms or offices with other people; oftentimes when in meetings, especially when conducted in closed quarters; when in school assemblies and on student field trips; when in stressful situations; and when confronted with surprises or unexpected situations in general. Under such conditions, he would also have difficulty concentrating, exercising his cognitive powers, speaking, and interacting with others.

8. By virtue of the foregoing circumstances, the plaintiff suffered from a "disability" within the meaning of section 12102(1) of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

9. Upon being hired by the defendant school district and during the interview process which immediately preceded it, the plaintiff made the defendant school district fully aware of his disability and requested several forms of accommodation from the defendant so that he could perform his job duties properly. His disability impaired his ability to perform his duties as a schoolteacher, but with reasonable accommodations he could perform those duties properly without undue burden on his employer, the defendant school district. The specific accommodations which the plaintiff requested were contained in an approved ADA accommodation plan that had been prepared by the Veterans Administration, a copy of which was given to the defendant and

filed with the school district's human resources director. Specifically, those accommodations were that the plaintiff be given at least 24 to 48 hours' notice of any meetings; that he be given a reasonably detailed agenda of any such meeting in advance; that any meetings in which he participated be conducted in spacious rooms, and that he be given a choice of meeting location, or at least input as to same; and that any such meetings be conducted in a structured, accessible meeting environment.

10. The defendant tacitly agreed to all of these accommodations by failing to take issue with them or to protest or object to them.

11. The plaintiff worked for the defendant school district during the 2024-2025 school year without any serious problems, complaints, or incidents. He had a good work record, and he was well-liked by his fellow teachers and by most of his students.

12. During the 2025-2026 school year, however, his class of 5th grade students included a problem student, "B.M.," who was unruly in the extreme. B.M. caused recurring commotion and chaos within the classroom and created fear, annoyance, and anxiety among the other students in the class, as well as severe disruption of the plaintiff's teaching activities and disruption of the normal educational process in general. Among the specific transgressions committed by B.M. were the following:

(a) he sexually harassed the female students in the class repeatedly, as well as other female elementary school students in other classes and other grades, by using sexually explicit language, innuendo, and lewd gestures;

(b) in one notorious incident, while the plaintiff was in the process of teaching the class in the normal and usual fashion, B.M. shouted out the word "cunt," presumably directed at one particular female student but possibly directed at all of the female students in the class generally;

(c) B.M.'s verbal harassment and his sexually explicit language and gestures eventually escalated into some incidents of actual touching of the female students in inappropriate places, as well as many threats of such touching;

(d) he was observed following female students into the girls' bathroom, an area obviously designated for female students only, where a male student had no business, and in a separate incident he told two female 4th grade students that he was going to follow them in there and touch them;

(e) in another notorious incident, a female teacher reported that B.M. had been found in a bathroom with two kindergarten boys who were naked from the waist down;

(f) in an incident or incidents occurring in art class (not the plaintiff's class), it was reported that B.M. had brandished a scissors and wielded it in such a fashion as to suggest that he would be using it as a weapon to assault and injure other students in the class, and that he did, in fact, throw the scissors at students in that class after threatening them with it, causing fear and anxiety among the students of that class;

(g) in at least one known instance, he spoke to another student about having sex in the bathroom.

13. The defendant school district was made well aware of B.M.'s behavioral problems and transgressions and of their effects on the other students. A representative sampling and summary of some of the specific acts of misbehavior on the part of B.M. is contained in a letter to the plaintiff dated August 10, 2026 from the Superintendent of Schools, Jared Fulgoni, adopting the findings of the school's own investigator:

> I adopt the investigator's findings that [B.M.] made comments that upset other students, including that he: (1) called [another student] "a bitch"; (2) talked to other students in the cafeteria about his

> "balls being filled"; (3) spoke to peers about the female reproductive system and menstrual cycles; (4) told students he "wanted to put his thing in a horse's backside" while he stood in the lunchroom, made moaning sounds, and moved his hips back and forth; (5) yelled the word "cunt" in his classroom in front of other students and his teacher; and (6) told another student "you're a lesbian who wants to marry all the girls."

14. When the first of these various incidents began occurring, shortly after the start of the fall semester of the 2025-2026 school year, the plaintiff immediately reported them to his immediate superiors in the school system, both verbally and in writing.

15. However, his reports and complaints were met with an entirely cavalier, blasé attitude on the part of the school administration. In response to his initial report, he received a half-hearted, noncommital, dismissive reply to the effect of "we'll look into it" or the like, and no substantive action was ever actually taken.

16. Nevertheless, as B.M.'s misbehavior persisted (and, in fact, increased in frequency and intensity), the plaintiff continued to report incidents of the former's misconduct. On or about September 17, 2025, he reported an incident in which B.M. had attempted to choke another student in the plaintiff's classroom. On or about October 27, 2025, he reported one of B.M.'s scissors threats that had been directed toward the other students. In just the first month-and-a-half of the school semester alone, he reported separate incidents of misconduct occurring on September 3, 2025, September 4, 2025, September 8, 2025, September 10, 2025, September 15, 2025, September 25, 2025. September 26, 2025, and October 15, 2025. Altogether, the plaintiff reported approximately 35 incidents of misconduct or other behavioral problems on the part of B.M. over the course of the full school year.

17. However, despite the number and frequency of these reports and the growing seriousness of B.M.'s conduct, and despite crediting the findings of its own investigator, as recounted

above-quoted letter from the school superintendent, the school administration took no corrective action and largely ignored the plaintiff's reports and complaints. In the end, the plaintiff on October 31, 2025 filed a Title IX complaint pursuant to Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 et seq., due to the school administration's failure to take any meaningful action.

18. As B.M.'s incidents of misconduct continued unabated, and as the school officials continued to be unresponsive to the plaintiff's complaints concerning same, the plaintiff grew increasingly frustrated at the school administration's inaction, and his communication with its officials began to be increasingly pointed. When the school principal, the assistant principal, and the human resources director failed to take any action in response to his reports, other than politely acknowledging their receipt of same, he wrote to the aforementioned superintendent of schools directly, complaining about B.M.'s ongoing misconduct and the school district's failure to make any effort to curb it. In reply, the plaintiff received a rather demeaning letter from the superintendent, somewhat condescending in tone, lecturing him that as a former military man he should know enough to observe the "chain of command" and that he should apply to his immediate supervisors for relief before bothering the superintendent. In reality, the plaintiff had already observed the chain of command and had already appealed to the principal and the other on-site school administrative officials to take action, but had gotten no satisfaction from them.

19. As the school year proceeded apace, B.M. continued to engage in misbehavior and continued to disrupt the plaintiff's classroom; the plaintiff continued to report it and complain to the principal, the superintendent, and other school administration officials; the school officials continued to take no meaningful action in response; and the plaintiff's complaints continued to become more and more acerbic, often pointing out specific violations of law on the part of the

school district and violations of the school's own policies. In particular, the plaintiff insisted that for the benefit and protection of B.M. himself, he (R.M.) be given a behavioral assessment and that a so-called "§ 504 plan" be formulated pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794, in an effort to curb his disruptive behavior and to redirect it.

20. As the plaintiff's complaints and criticisms concerning the defendant school district's inaction became increasingly more pointed, the plaintiff correspondingly became increasingly unpopular with the school administration, especially after he began charging that the defendant school district was failing to comply with the law and failing to comply with its own policies. Ultimately, the defendant refused to renew the plaintiff's contract in retaliation against him for his having complained of the school district's violations of the Americans with Disabilities Act, Title IX of the Educational Amendments of 1972, the aforementioned Rehabilitation Act of 1973, and perhaps other laws; for his having complained of the defendant's failure to take appropriate action in response to B.M.'s disruptive behavior and having criticized the school district's officials for their persistent failure to do so; and for his complaints concerning the defendant's violations of law and its failure to comply with its own policies.

21. Moreover, the defendant's refusal to renew the plaintiff's contract was done in a manner which violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. The pretext given by the defendant school district for refusing to renew the plaintiff's contract was that he had been rude, insubordinate, and disrespectful during a certain meeting which took place on March 18, 2026. The plaintiff disputes the defendant school district's version of that meeting and denies that he was rude, insubordinate, ot disrespectful. However, even if wholly or partially true, any such perceived rudeness, insubordination, or disrespect was a direct result of the defendant school district's violations of the Americans with Disabilities Act and its failure to

observe and honor the accommodations to the plaintiff's disability which the plaintiff had requested, as recommended in the approved ADA accommodation plan which the Veterans Administration had prepared. In effect, the defendant's refusal to renew the plaintiff's contract was based on conduct on the plaintiff's part which was the predictable result of the defendant's own violations of the Americans with Disabilities Act. Specifically:

22. As noted above, contemporaneously with the plaintiff's interviewing and hiring for the position of elementary school teacher, the plaintiff informed the defendant school district of his disability (viz., his post-traumatic stress disorder (PTSD)) and requested the accommodations which the Veterans Administration had recommended and which, by its silence, the defendant school district had tacitly agreed to. Specifically, the plaintiff requested that: (a) he be given 24 to 48 hours' notice of any meetings; (b) he be given a reasonably detailed agenda of any such meeting in advance; (c) any meetings in which he participated be conducted in fairly spacious rooms, and that he be given a choice of meeting location, or at least input as to same; and (d) that any such meetings be conducted in a structured, accessible meeting environment.

23. The reasons for these forms of accommodation were that because of his PTSD, the plaintiff does not handle himself well in unexpected or surprise situations and tends to become nervous and anxious in same, and he requires advance notice of such meetings so that he can brace himself for the upcoming meeting and prepare for it.

24. However, in the instance of the March 18, 2026 meeting the plaintiff was given no advance notice whatsoever of the meeting, nor any warning at all, but was merely buttonholed by a school official as he (the plaintiff) was on his way to lunch on that date, and he was ordered to join a meeting that was already in progress. He was not given any meeting agenda, either before

or after the meeing; and, to make matters worse, the attendees of the meeting included B.M.'s mother via Zoom, which put additional pressure on him.

25. By the foregoing series of events, the defendant violated the Americans with Disabilities Act, and to the extent that the plaintiff may have made intemperate or other inadvisable remarks during that meeting, or otherwise conducted himself inappropriately, they were the direct and predictable result of that violation.

26. Furthermore, this was not the only such violation of the Act by the defendant. On October 27, 2025, the plaintiff was similarly called into an unscheduled meeting to discuss some of B.M.'s recent behavior, specifically, B.M.'s threatening harm to the other students and throwing scissors at them. As in the case of the later, March 18, 2026 meeting, he was similarly given no advance notice of this meeting and no meeting agenda either before or after the meeting.

27. Yet another violation of the Act took place on the afternoon of March 27, 2026, a Friday, when the plaintiff received an e-mail message notifying him that he needed to meet with the principal the following Monday afternoon, March 30, 2026. Once again, the plaintiff was not given any meeting agenda, nor any say in the location of the meeting, and he was not otherwise told the purpose of that meeting. It was at that meeting that the plaintiff was informed that his contract would not be renewed for the following school year, and the principal pressured him into resigning from his position by telling him that he had a choice of either resigning or having his personnel file reflect that renewal of his contract had been involuntarily denied. (The plaintiff subsequently rescinded his resignation, after having had time and opportunity to reflect on the matter and to consider his options.)

28. Notifying him on late Friday afternoon of a Monday afternoon meeting without informing him of the purpose of that meeting gave him no opportunity to prepare for same or to

consult or recruit an attorney or other consultant to assist him, and it violated his ADA plan and therefore the provisions of the Americans with Disabilities Act.

29. As a result of the defendant's violations of said Act, the plaintiff has been wrongfully denied continuing employment in a position to which he had become comfortable and which, despite his conflicts with B.M., he had come to enjoy; he has lost the income which he would have earned; he has suffered injury to his good name and reputation, and his work record has been unfairly tarnished; and he has suffered other injuries and losses, including emotional damage.

30. By virtue of the foregoing facts and circumstances, the plaintiff is entitled to reinstatement into his position and to recovery of back pay.

31. Under section 12205 of the Americans with Disabilities Act, 42 U.S.C. § 12205, the plaintiff is also entitled to recover his attorney's fees for bringing and prosecuting this action.

32. The plaintiff has complied with all conditions precedent to the maintenance of this action. The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission well within 180 days of being notified on March 30, 2026 that he was not being rehired, and on July 20, 2026 the EEOC issued him a Right-to-Sue letter.

WHEREFORE, the plaintiff respectfully prays that the Court grant him the following relief:

(a) that the Court order the defendant to reinstate the plaintiff in his former position as a grade school teacher at the defendant's Chamberlain Street School or to place him in some other, reasonably equivalent position with no reduction in salary;

(b) that the plaintiff be awarded back pay and/or other compensation for the income that he has lost by virtue of not having worked for the defendant during the present, 2026-2027 school year, and continuing such compensation until such time as the plaintiff may be reinstated;

(c) that judgment be entered in favor of the plaintiff and against the defendant in such amount as the Court may deem just and equitable, plus interest and the costs of maintaining this action;

(d) that pursuant to section 12205 of the Americans with Disabilities Act, 42 U.S.C. § 12205, the plaintiff be awarded all of his attorney's fees, costs, and litigation expenses for bringing and prosecuting this action; and

(e) such other and further relief as the Court may deem appropriate.

Count II

Wrongful Termination of Employment

33. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This is a state law claim arising out of the same set of operative facts and events as a claim over which this Court already has jurisdiction.

34. The plaintiff realleges the facts and allegations set forth above in Paragraphs 1 through 32 hereof, which are incorporated herein by reference as if fully rewritten.

35. By the foregoing acts and conduct, the defendant has constructively discharged the plaintiff and/or has otherwise wrongfully terminated the plaintiff's employment, in that the defendant terminated the plaintiff's employment and/or pressured him to resign in whole or in part as retaliation against him for complaining of B.M.'s unruly conduct, for complaining of the defendant's failure to take any action to curb it and its failure to take steps to prevent sexual and other harassment of the other students by B.M., and for complaining of the defendant's failure to

give B.M. the special needs evaluation and treatment to which he was entitled under, inter alia, the Rehabilitation Act of 1973, 29 U.S.C. § 794.

36. The defendant also terminated the plaintiff's employment (i.e., refused to renew his contract) in part as retaliation against the plaintiff for his having filed a Title IX complaint against B.M. pursuant to Title IX of the Educational Amendments Act of 1972, 20 U.S.C. § 1681 et seq., on behalf of the other students, particularly the female students, on October 31, 2025, after the defendant refused to take any meaningful action to try to curb and correct B.M.'s conduct. The filing of the Title IX complaint constituted an embarrassment to the defendant school district and also imposed additional burden on it, as the defendant was necessarily drawn into the complaint adjudicative process and was obliged to expend substantial time, effort, and resources on it. The defendant was resentful of the plaintiff's filing of that complaint, and its filing was a motivating force behind the plaintiff's termination/non-rehiring.

37. As a result of the wrongful termination of the plaintiff's employment via the non-renewal of his contract, the plaintiff has suffered the damages and losses adverted-to herein-before.

WHEREFORE, the plaintiff hereby demands that judgment be entered in his favor and against the defendant in such amount as the Court may deem just and equitable, plus interest and the costs of maintaining this action.

## Count III

## New Hampshire Whistleblowers' Protection Act Violation

38. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This is a state law claim arising out of the same set of operative facts and events as a claim over which this Court already has jurisdiction.

39. The plaintiff realleges the facts and allegations set forth above in Paragraphs 1 through 32 and 35 through 37 hereof, which are incorporated herein by reference as if fully rewritten.

40. By the foregoing acts and conduct, the defendant has violated the New Hampshire Whistleblowers' Protection Act, N.H. RSA 275-E.

41. As a result of the defendant's violation of said Act, the plaintiff has suffered the damages and losses adverted-to hereinbefore.

42. Under subsection E:2, II of said Act, N.H. RSA 275-E:2, II, the plaintiff is entitled to reinstatement and back pay and is entitled to recover his attorney's fees and costs.

WHEREFORE, the plaintiff respectfully prays that the Court grant him the following relief:

(a) that the Court order the defendant to reinstate the plaintiff in his former position as a grade school teacher at the defendant's Chamberlain Street School or to place him in some other, reasonably equivalent position with no reduction in salary;

(b) that the plaintiff be awarded back pay and/or other compensation for the income that he has lost by virtue of not having worked for the defendant during the present, 2026-2027 school year, and for pay continuing until such time as the plaintiff may be reinstated;

(c) that judgment be entered in favor of the plaintiff and against the defendant in such amount as the Court may deem just and equitable, plus interest and the costs of maintaining this action;

(d) that the plaintiff be awarded all of his attorney's fees, costs, and litigation expenses for bringing and prosecuting this action; and

(e) such other and further relief as the Court may deem appropriate.

Count IV

New Hampshire State Law Disability Discrimination Claim

43. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This is a state law claim arising out of the same set of operative facts and events as a claim over which this Court already has jurisdiction.

44. The plaintiff realleges the facts and allegations set forth above in Paragraphs 1 through 32 and 35 through 37 hereof, which are incorporated herein by reference as if fully rewritten.

45. By the foregoing acts and conduct, the defendant has violated the provisions of the New Hampshire state laws against disability discrimination, N.H. RSA 354-A:6 and -:7, and particularly RSA 354-A:7, VII.

46. As a result of such violations, the plaintiff has suffered the damages and losses adverted-to hereinbefore.

WHEREFORE, the plaintiff respectfully prays that the Court grant him the following relief:

(a) that the Court order the defendant to reinstate the plaintiff in his former position as a grade school teacher at the defendant's Chamberlain Street School or to place him in some other, reasonably equivalent position with no reduction in salary;

(b) that the plaintiff be awarded back pay and/or other compensation for the income that he has lost by virtue of not having worked for the defendant during the present, 2026-2027 school year, and continuing such compensation until such time as the plaintiff may be reinstated;

(c) that judgment be entered in favor of the plaintiff and against the defendant in such amount as the Court may deem just and equitable, plus interest and the costs of maintaining this action;

(d) that the plaintiff be awarded all of his attorney's fees, costs, and litigation expenses for bringing and prosecuting this action; and

(e) such other and further relief as the Court may deem appropriate.

**/s/ Duncan J. MacCallum**
Duncan J. MacCallum
NHBA #1576
536 State Street
Portsmouth, New Hampshire 03801
(603) 431-1230
madbarrister@aol.com
Attorney for Plaintiff